UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ARNOLD BROWN et al.

                                Plaintiffs,

-against-

THE CITY OF NEW YORK and PAUL BROWN,
JARED FOX, JOSEPH GULOTTA, ERNEST KENNER,
EVAN NIELSON, PATRICK QUINLAN, BEATRICE
SHAFIDIYA, GEORGE TAVARES, PHILIP
WILLIAMS, FREDERICK VANPELT, and DOES 11-14,
*individually and in their official capacities,*

                                Defendants.
------------------------------------------------------------------------X

**SECOND AMENDED COMPLAINT**

Jury Trial Demanded

Docket Number 14-CV-2700

Plaintiffs LYNDON ARNON a/k/a ARNON LYNDON, ARNOLD BROWN, CEDRIC CHAMBERS, ANTHONY DAWKINS, JOMO FARRIER, ADAM HOWARD, EVONY HOWARD, RANDY LESPIERRE, JUAN MARTINS, JERMAINE MYLES, and ROMEO SCARLETT, by and through their attorney, LAW OFFICE OF MATTHEW S. PORGES, ESQ., complaining of the Defendants herein, alleges, upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1.     This is a civil action based upon the Defendants' violations of the United States Constitution, as enforced by 42 U.S.C. §1983, New York common law, and any other common law or statutory cause of action that can be inferred from the facts set forth herein.

1

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and under 28 U.S.C. § 1343, as Plaintiffs' claims arise, in part, under the United States Constitution, as enforced by 42 U.S.C. §1983.  The supplemental jurisdiction of the Court (28 U.S.C. § 1367) is invoked over state and local law causes of action.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## PREREQUISITES FOR STATE LAW CLAIMS

4. The prerequisites for Plaintiffs' state law claims have been completed.

5. On April 29, 2013, Plaintiffs Adam Howard and Jermaine Myles duly served a Notice of Claim upon the Comptroller of the City of New York and upon the New York City Police Department. On April 30, 2013, all other plaintiffs duly served a Notice of Claim upon the Comptroller of the City of New York and Upon the New York City Police Department.  Said Notices of Claim stated the nature of the claims, as well as the date, time, and place and manner in which the claim arose.

6. On July 2, 2013 Plaintiffs Farrier and Lespierre duly complied with the requirement of oral examination pursuant to Section 50-h of the General Municipal Law. On September 16, 2013, Plaintiff Scarlett duly complied with the requirement of oral examination pursuant to Section 50-h of the General Municipal Law.  On September 18, 2013, Plaintiffs Brown, Adam Howard, Arnon, and Martins duly complied with the requirement of oral examination pursuant to Section 50-h of the General Municipal Law. On September 19, 2013, Plaintiff Myles duly complied with the requirement of oral examination pursuant to section 50-h of the General Municipal Law. On January 24,

       2014, Plaintiff Anthony Dawkins duly complied with the requirement of oral examination pursuant to Section 50-h of the General Municipal Law. On March 18, 2014, Plaintiffs Chambers and Evony Howard duly complied with the requirement of oral examination pursuant to Section 50-h of the General Municipality law.

7. More than thirty days have elapsed since the Notice of Claim has been served upon the Defendants and Defendants have neglected or refused to make any adjustment or payment thereof.

8. This action is commenced within one year and ninety days after the cause of action arose.

## PARTIES

9. Plaintiff Lyndon Arnon a/k/a Arnon Lyndon ("Arnon") was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

10. Plaintiff Arnold Brown ("Brown"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

11. Plaintiff Cedric Chambers ("Chambers"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

12. Plaintiff Anthony Dawkins ("Dawkins"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

13. Plaintiff Jomo Farrier ("Farrier"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

14. Plaintiff Adam Howard ("Adam Howard"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

15. Plaintiff Evony Howard ("Evony Howard"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

16. Plaintiff Randy Lespierre ("Lespierre"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

17. Plaintiff Juan Martins ("Martins"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

18. Plaintiff Jermaine Myles ("Myles"), was, at all relevant times to this action, a resident of the County of Kings and the City and State of New York. Plaintiff Myles is now a resident County of Sullivan and the State of New York.

19. Plaintiff Romeo Scarlett ("Scarlett"), was, at all relevant times, and still is a resident of the County of Kings and the City and State of New York.

20. Defendant City of New York ("City") was and still is a municipality incorporated and organized under the laws of the State of New York. The City governs, supervises, operates, and otherwise controls the New York City Police Department ("NYPD") and New York City Police Department's employees, agents, and servants and policies, practices, customs, and procedures. The City is responsible for the acts and omissions of the NYPD, its employees, agents, and servants.

21. Defendant Police Officer Paul Brown ("Brown"), at all relevant times, is and/or was a police officer and/or ranking officer for the NYPD. Accordingly, at all relevant times alleged, Defendant Brown is and/or was an agent, servant, or employee of Defendant City. At all relevant times alleged, Defendant Brown was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

22. Defendant Police Officer Jared Fox ("Fox"), at all relevant times, is and/or was a police officers and/or ranking officer for the NYPD. Accordingly, at all relevant times alleged, Defendant Fox is and/or was an agent, servant, or employee of Defendant City. At all relevant times alleged, Defendant Fox was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

23. Defendant Deputy Inspector Joseph Gullota ("Gullota"), at all relevant times, is and/or was a ranking officer for the NYPD and the Commanding Officer of the 73rd Precinct, in which 494 Chauncey Street, Brooklyn, New York was located. Accordingly, at all relevant times alleged, Defendant Fox is and/or was an agent, servant, or employee of Defendant City. At all relevant times alleged, Defendant Fox was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

24. Defendant Police Officer Ernest Kenner ("Kenner"), at all relevant times, is and/or was a police officer and/or ranking officer for the NYPD. Accordingly, at all relevant times alleged, Defendant Kenner is and/or was an agent, servant, or employee of Defendant City. At all relevant times alleged, Defendant Kenner was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

25. Defendant Police Officer Evan Nielson ("Nielson"), at all relevant times, is and/or was a police officer and/or ranking officer for the NYPD. Accordingly, at all relevant times alleged, Defendant Nielson is and/or was an agent, servant, or employee of Defendant City. At all relevant times alleged, Defendant Nielson was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

26. Defendant Detective Patrick Quinlan ("Quinlan"), at all relevant times, is and/or was a police officer, detective, and/or ranking officer for the NYPD.  Accordingly, at all relevant times alleged, Defendant Quinlan is and/or was an agent, servant, or employee and a policymaker of Defendant City.  At all relevant times alleged, Defendant Quinlan was acting within the scope of his duties as a police officer, detective, and/or ranking officer for the NYPD.

27. Defendant Sergeant Beatrice Shafidiyia ("Shafidiyia"), at all relevant times, is and/or was a police officer and/or ranking officer for the NYPD.  Accordingly, at all relevant times alleged, Defendant Shafidiyia is and/or was an agent, servant, or employee and a policymaker of NYPD and City.  At all relevant times alleged, Defendant Shafidiyia was acting within the scope of her duties as a police officer and/or ranking officer for the NYPD.

28. Defendant Sergeant George Tavares ("Tavares"), at all relevant times, is and/or was a police officer and/or ranking officer for the NYPD.  Accordingly, at all relevant times alleged, Defendant Tavares is and/or was an agent, servant, or employee and a policymaker of NYPD and City.  At all relevant times alleged, Defendant Tavares was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

29. Defendant Police Officer Frederick Vanpelt ("Vanpelt"), at all relevant times, is and/or was a police officer and/or ranking officer for the NYPD.  Accordingly, at all relevant times alleged, Defendant Vanpelt is and/or was an agent, servant, or employee of Defendant City.  At all relevant times alleged, Defendant Vanpelt was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

30. Defendant Sergeant Philip Williams ("Williams"), at all relevant times, is and/or was a police officer and/or ranking officer for the NYPD.  Accordingly, at all relevant times alleged, Defendant Williams is and/or was an agent, servant, or employee and a policymaker of NYPD and City.  At all relevant times alleged, Defendant Williams was acting within the scope of his duties as a police officer and/or ranking officer for the NYPD.

31. Defendants Does 11-14, the names of said individuals being fictitious, at all relevant times, are and/or were police officers, detectives, and/or ranking officers for the NYPD.  Accordingly, at all relevant times alleged, Does 11-14 are and/or were agents, servants, or employees and/or policymakers of Defendant City.  At all relevant times alleged, Does 11-14 were acting within the scope of their duties as police officers, detectives, and/or ranking officers for the NYPD.

## FACTS

Arrival of Defendants at 494 Chauncey Street

32. With the exception of Evony Howard and Myles, all of the Plaintiffs, at all relevant times, rented a single room, with shared communal kitchens and bathrooms on each floor, in the building located at 494 Chauncey Street, Brooklyn, NY 11233 ("Premises").  Evony Howard, who lived with her minor children, rented, at all relevant times, a largely private "suite" of rooms, including bedroom(s), a kitchen, and a bathroom.  Myles was lawfully in the Premises at all relevant times, at the invite of his friends, Evony Howard and Adam Howard.

33. On or about January 30, 2013, at approximately 1:00 p.m., all Plaintiffs except Brown and Farrier were lawfully and properly in their residences with the Premises. Plaintiffs Brown and Farrier resided in the Premises on that day, but were not inside of the Premises at the times at issue.

34. At that approximate time, two of the individual Defendants arrived at the Premises and cordoned off the street in front of the Premises. After the street was cordoned off, two of the individual defendants approached the front door of Premises with a battering ram.

35. Plaintiff Brown, who had just returned to the Premises, saw the police attempting to enter and offered to lend his front door keys to an officer so that the police could easily access the Premises. However, Defendants refused that offer and proceeded to enter the Premises using the battering ram.

Removal of Plaintiffs from Premises and Detainment in Street

36. While Defendants attempted to enter the Premises, Evony Howard was braiding her eldest daughter's hair, while her brother, Adam Howard, watched television with friend Myles and Evony Howard's youngest daughter.

37. Upon hearing noises coming from near the front door, Adam Howard walked towards that door to investigate what was occurring. Adam Howard then encountered the Defendant police officers. One of the individual defendants briefly questioned Adam Howard before Defendants handcuffed Adam Howard and brought him outside the Premises without advising him of his rights under *Miranda v. Arizona* ("*Miranda* rights"). When Adam Howard was taken outside, he was barefoot and wearing only sweatpants and a t-shirt. Defendants denied several requests by Adam Howard to retrieve footwear and suitable clothing.

38. Upon Adam Howard's departure and failure to return, Myles went to investigate what was occurring. He quickly found a gun pointed at him by one of the individual defendants. Defendants then removed Myles from the Premises without advising him of his *Miranda* rights or explaining why he was being detained. While Myles was waiting outside, one individual defendant accused Myles of being the leader of operation for a drug house.

39. Evony Howard and her two children were then removed from the Premises. They were not advised of their *Miranda* rights. Evony and her two daughters stood outside for approximately two hours before they were placed in a police car. Evony was six months pregnant and was wearing shorts and a t-shirt with no coat, socks, or footwear. The children had no shoes, jackets, or sweaters. The youngest daughter was wearing nothing but pampers and a t-shirt and the oldest daughter was wearing only a nightgown.

40. Around the time Defendant arrived at the Premises, Arnon was in a room in the basement of the Premises, setting up to begin painting for the landlord of the Premises. Arnon heard sirens and knocking upstairs. Arnon walked up to the first floor to investigate. Once upstairs, Arnon was questioned by Defendants. As requested, Arnon emptied his pockets. Arnon removed a cell phone from his pocket and showed it to one of Defendants, who then slapped it out of his hand onto the floor. Arnon was then handcuffed and brought outside on the street in front of the Premises.

41. Around the same time, Lespierre awoke due to from loud noise coming from outside his room, followed by a voice ordering him to come out with his hands in the air.  Lespierre complied.  Defendants did not advise Lespierre of his *Miranda* rights or explain why he was being handcuffed.  One of the individual defendants ordered Lespierre to leave the Premises without putting on additional clothing.  Defendants forced Lespierre to stand outside the Premises, for hours, without a jacket or shoes.

42. At or around the same time, Chambers and Dawkins were watching television in the same room when they heard banging on their adjacent doors.

43. When the door was opened, two of the individual defendants were standing in the doorway with shields.  Without warning, one of the individual defendants burst into the room, making forcible contact with Chambers' hand with that individual defendant's shield, causing Chambers to fall to the floor.  Upon standing up, Chambers felt discomfort in his right wrist.  One of the individual defendants then handcuffed and briefly questioned Chambers.  Defendants did not explain to Chambers why he was being treated in this manner, though he asked.

44. One of the individual defendants entered the room and jumped on top of Dawkins while he was lying on a mattress.  Even though he was not resisting, Dawkins was forcibly pulled off the bed and thrown on the floor. Dawkins' face was pushed into the floor, making forceful contact with his lip and causing it to bleed. One of the individual defendants then placed his knee into Dawkins' back, and told Dawkins him to put his hands behind his back.

45. Defendants removed Chambers from the Premises and detained him outside the Premises without shoes. Chambers made several request to one of the individual defendants to retrieve footwear, but Defendants refused those requests. Dawkins was not advised of his *Miranda* rights, but was taken outside of the Premises wearing only a shirt and pants, but no shoes.

46. Around the time Defendants arrived at the Premises, Scarlett was sleeping in his the third floor room. Officers burst into Scarlett's room and one of the individual defendants pointed a gun at Scarlett. That individual defendant instructed Scarlett to put on some pants. Upon Scarlett's compliance, that individual defendant pushed Scarlett to the floor, handcuffed Scarlett, and searched Scarlett. Scarlett made no attempt to resist. Defendants did not advise Scarlett of his *Miranda* rights, but removed him from the Premises.

47. Around the time Defendants arrived at the Premises, Martins heard a noise upstairs and went to investigate. One of the individual defendants entered Martins' basement room and pointed his guns at Martins. Defendants then instructed Martins to go upstairs to the first floor. Upon reaching the first floor, Martins was thrown on the floor and handcuffed by one of the individual defendants. Martins was not advised of his *Miranda* rights, but Defendants removed him from the Premises. Martins was forced to wait outside the Premises without any shoes.

48. Once all residents had been removed from the Premises, Defendants, without consent or a warrant, conducted a full search of Premises. Defendants searched the Premises for several hours before seeking a search warrant.

49. All Plaintiffs, except for Brown, Farrier, and Evony Howard, were arrested and placed in a police van but were not advised of their *Miranda* rights. Evony Howard and her children were not taken away by Defendants but they and Plaintiffs Brown and Farrier were not permitted to return to the Premises while Defendants searched the Premises.

Detainment at Precinct and Central Booking

50. Defendants took Plaintiffs Arnon, Chambers, Dawkins, Adam Howard, Lespierre, Martins, Myles, and Scarlett, by police van to the County of Kings' 78th Precinct ("Precinct"), located at 30 Ralph Avenue, County of Kings and City and State of New York.

51. Upon arrival at the Precinct, Chambers complained to one of the individual defendants, about the swelling of his right wrist, to no avail. Adam Howard spoke to a medic about his missing footwear, but he was not given footwear.

52. These Plaintiffs were held at the Precinct for hours and then brought to Kings County Central Booking ("Central Booking"), located at 120 Schermerhorn Street, in the County of Kings and City and State of New York.

53. All of the Plaintiffs who were brought to the Precinct and Central Booking, except Lespierre and Arnon, were released without being arraigned or charged, despite being held in custody by Defendants for several hours each.

54. Arnon and Lespierre were charged and arraigned. Their charges are still pending in Kings County Criminal Court. Arnon and Lespierre have pled not guilty to all charges.

Aftermath of Raid

55. When Arnon attempted to obtain his possessions which had been confiscated by Defendants, one of the individual defendants informed Arnon that Defendants were

12

      unable to return his confiscated keys and wallet. Despite subsequent intervention by the Kings County District Attorney, Arnon has not, to date, had all of his confiscated property returned. Because of this detention of property, Arnon suffered various financial damages.

56. Upon their returning to the Premises, all Plaintiffs discovered that the Premises was severely damaged and their personal property was missing and/or broken. Plaintiffs also suffered various mental and/or physical injuries as a result of Defendants' conduct. Plaintiffs also incurred financial damages replacing the missing or damaged property and fixing their rented spaces.

## FIRST CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS EXCEPT FARRIER AND BROWN
(False Arrest/False Imprisonment)
(Against All Defendants)

57. Plaintiffs repeat and reallege each and every allegation above as though more fully set forth herein.

58. By arresting and/or detaining Plaintiffs without justification, Defendants intended to confine Plaintiffs.

59. Plaintiffs, by being handcuffed, placed in police vehicles, and/or detained outside the Premises and/or at the Precinct and Central Booking, were conscious of said confinement.

60. Plaintiffs did not consent to said unlawful and improper confinement, which was not privileged.

### SECOND CAUSE OF ACTION ON BEHALF OF
### ALL PLAINTIFFS EXCEPT FARRIER, EVONY HOWARD, AND BROWN
(Assault and Battery)
(Against All Defendants)

61. Plaintiffs repeat and reallege each and every allegation above as though more fully set forth herein.

62. In arresting and processing Plaintiffs, Defendants intentionally made bodily contact with Plaintiffs which was harmful or offensive in nature in that Plaintiffs were, at a minimum, pushed, hit, invasively searched, slammed, and/or had handcuffs tightened around them.

63. Prior to that harmful or offensive bodily contact, Defendants intentionally placed Plaintiffs in reasonable fear of said imminent harmful or offensive bodily contact.

### THIRD CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS
(Conversion)
(Against All Defendants)

64. Plaintiff repeats and realleges each and every allegation above as though more fully set forth herein.

65. Because the property taken by Defendants was not or was largely not evidence in a criminal manner, Defendants did not have the right to possess the majority or all of the property which Defendants confiscated.

66. However, Defendants maintained dominion over that property, in derogation of Plaintiffs' rights.

67. As a result, Defendants have converted that property.

### FOURTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS
(Negligence)
(Against All Defendants)

68. Plaintiffs repeat and re-allege each and every allegation above as though more fully set forth herein.

69. Defendants, as law enforcement officers, had a duty to prevent damage to Plaintiffs' personal property and damage to the Premises while undertaking the aforementioned raid of the Premises.

70. Defendants breached that duty by permitting Plaintiffs' personal property and the Premises to be damaged and/or by causing said damage.

71. Because of that breach by Defendants, Plaintiffs have been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS
(42 U.S.C. §1983)
(Against All Defendants)

72. Plaintiffs repeat and reallege each and every allegation above as though more fully set forth herein.

73. Defendants have, while acting under color of state law, deprived Plaintiff of their constitutional rights, as secured by, at minimum, the Fourth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, and all related provisions of the New York State Constitution.  Specifically, Defendants deprived Plaintiffs of Constitutional rights and protection under the United States Constitution and other state, federal, and local rights and protections.  Those rights and protections included, but were not limited to, the right to be free from unreasonable searches and

15

seizures, the right to due process, the right to be free from cruel and unusual punishment, the right to be detained and/or arrested with the existence of probable cause, and/or the right to counsel, as well as the rights and/or protections against false arrest and/or the use of excessive force.

74. Defendants have intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiffs' constitutional rights.  Such deliberate indifference may be inferred in, *inter alia*, the following ways:

   a. Inadequate training/supervision by the City and NYPD was so likely to result in the aforementioned conduct that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision; and
   b. Policymakers of the City and NYPD tacitly condoned the aforementioned conduct; and
   c. The custom or practice, by the City and the NYPD, of engaging in the aforementioned conduct in the absence of without justification and/or probable cause. Said practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers;

75. Defendants PAUL BROWN, JARED FOX, JOSEPH GULOTTA, ERNEST KENNER, EVAN NIELSON, PATRICK QUINLAN, BEATRICE SHAFIDIYA, GEORGE TAVARES, PHILIP WILLIAMS, FREDERICK VANPELT, and DOES 11-14 (collectively, "Individual Defendants") unlawfully and personally participated in and/or permitted the aforementioned unlawful conduct to perpetuate, without abatement, in violation of Plaintiffs' constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs demand judgment against all Defendants in the form of and/or for compensatory, emotional, physical, and punitive damages (where applicable), injunctive relief, and any other damages and/or relief permitted by law.  Plaintiffs also demand judgment against all Defendants for each cause of action and for all applicable and permissible damages, in an amount to be assessed at the time of trial.  Plaintiffs further seek injunctive relief, including but not limited to, a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiffs' rights. Plaintiffs further demand all attorneys' fees, disbursements and other costs and all further relief, equitable or otherwise, to which Plaintiffs are entitled and/or which this Court deems just and proper.

Dated: Brooklyn, New York
         September 16, 2014

Law Office of Matthew S. Porges, Esq.,
*Attorney for Plaintiffs*
641 President Street, Suite 205
Brooklyn, New York 11215-1186
(718) 673-2578 (Phone)

/s/_____
MATTHEW S. PORGES

17