UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
ARNOLD BROWN et al.,                                       :
                                    Plaintiffs,            :
                                                           :     **MEMORANDUM OPINION**
                  - against -                              :
                                                           :     14 Civ. 2700 (BMC)
                                                           :
THE CITY OF NEW YORK and JARED FOX,                        :
JOSEPH GULOTTA, ERNEST KENNER,                             :
EVAN NIELSON, PATRICK QUINLAN,                             :
BEATRICE SHAFIDIYA, GEORGE                                 :
TAVARES, PHILIP WILLIAMS, FREDERICK                        :
VANPELT, and DOES 12-14, individually and                  :
in their official capacities,                              :
                                                           :
                                    Defendants.            :
                                                           :
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs bring this action, pursuant to 42 U.S.C. § 1983, claiming violations of their constitutional rights resulting from police searches of a house in Brooklyn (the "Premises"). Plaintiffs also allege a <u>Monell</u> claim and related state law claims. This opinion sets forth the basis for the Court's Order, dated December 31, 2014, granting defendants' motion for summary judgment and denying plaintiffs' motion for partial summary judgment.

## BACKGROUND

The following facts are not in dispute. On January 30, 2013, a man was shot on Chauncey Street in Brooklyn. After receiving a radio call about the shooting at around 1 p.m., police officers from Brooklyn's 73rd Precinct, a few of whom are defendants, responded to the scene. Upon their arrival, the officers learned from several witnesses that the shooter ran into the Premises, a three story residential building where all plaintiffs were either residing or visiting that day. Defendant Sergeant Shafidiya relayed this message to defendant Deputy Inspector

Gulotta, the commanding officer of the 73rd Precinct, who was not yet on scene. Deputy Inspector Gulotta ordered the establishment of a perimeter around the Premises to ensure that nobody entered or left. An Emergency Services Unit ("ESU") team was brought in to search the Premises for the shooter.

Prior to the ESU's initial search, one precinct member, defendant Officer Van Pelt, was assigned to conduct surveillance on a rooftop near the Premises. Before he went up on the roof, another officer stationed in the park behind the Premises reported to him that an unidentified witness said that someone jumped over the back fence of the Premises. Officer Van Pelt reported this information to defendant Sergeant Tavares.

Once the ESU arrived, they conducted a "perp search", which consisted of a floor-by-floor search of the rooms, to locate and detain the shooter. All occupants (including plaintiffs) were asked to leave the Premises and were detained for a period of time. Plaintiffs Brown and Farrier both resided at the Premises, but were not home at the time of the search.

Defendants temporarily detained all plaintiffs. Although plaintiffs Chambers and Dawkins saw and heard the police escorting people out of the Premises, they returned to Chambers' room and closed the door. When the officers entered Chambers' room, both Chambers and Dawkins were seated. Chambers jumped from his chair, which was within arms' reach of the officer. The officer knocked Chambers down with his shield, hitting Chambers' left wrist. Plaintiff Dawkins also stood from his seat, and was knocked to the floor by an officer's shield. Dawkins suffered a cut to his lip.

While exiting the basement of the Premises, plaintiff Martins was pushed down and bent over in order to be handcuffed. He suffered no physical injuries. Defendants encountered plaintiff Arnon while he was exiting the basement. He informed the police that he was in

2

possession of a phone and a knife.  As he was removing an item from his pocket – his phone – police slapped it out of his hand.  Plaintiff Arnon suffered no physical injuries.

The initial "perp search" did not reveal the shooter.  However, ESU officers observed contraband during their search and conveyed this information to Deputy Inspector Gulotta.  Once the "perp search" concluded, control of the Premises was given to the 73rd Precinct.

After the ESU departed, and within 30 minutes after the initial sweep, officers from the Precinct conducted a "secondary search" of the Premises to make sure that the shooter was not still inside and to protect the Precinct officers instructed to remain at the Premises while a warrant was being obtained.  During this sweep officers observed marijuana in the basement and three rooms on the first floor of the Premises.  In addition, they observed a firearm in a basement hall closet accessible to all occupants.  Rather than seize the contraband, Deputy Inspector Gulotta instructed the officers to leave it and continue sweeping the Premises for additional occupants.

Once it was determined that nobody remained in the building, defendants Sergeant Tavares and Officer Fox went to the District Attorney's office to secure a search warrant for the Premises based on the presence of the contraband.  A warrant was obtained at approximately 11:15 p.m. and was executed at 11:50 p.m.  The contraband was collected during this search.

All plaintiffs except Brown, Farrier, and Evony Howard were brought to the Precinct for questioning.  Plaintiffs Lespierre, Arnon, Martins, Adam Howard, and Myles were arrested in connection with the seized contraband.  Only plaintiffs Lespierre and Arnon were charged, but the charges were eventually dismissed or adjourned in contemplation of dismissal.  The remaining plaintiffs were released without charge.

**DISCUSSION**

**I**

Summary judgment is appropriate where there are no genuine disputes of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). No genuine factual issue exists when the moving party demonstrates, on the basis of the pleadings and admissible evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no reasonable jury could find in the non-movant's favor. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996). A party may not defeat a motion for summary judgment by relying on unsupported assertions, conjecture, or surmise. See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).

**II**

The Fourth Amendment generally prohibits warrantless entry into a person's home. See Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990). However, "[i]t is well settled . . . that the warrant requirement must yield in those situations where exigent circumstances demand that law enforcement agents act without delay." United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990). More specifically, the Fourth Amendment does not require police officers to delay their investigation if doing so "would gravely endanger the lives or the lives of others." Warden v. Hayden, 387 U.S. 294, 298-99, 87 S. Ct. 1642, 1646 (1967). Therefore, "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." Kirk v. Louisiana, 536 U.S. 635, 638, 122 S. Ct. 2458, 2459 (2002). Where, as here, the facts are undisputed, the presence or

absence of exigent circumstances presents a legal issue. See e.g., Anthony v. City of New York, 339 F.3d. 129, 136 (2d Cir. 2003).

"The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action." MacDonald, 916 F.2d at 769 (internal quotation marks omitted). This is an "objective test" that "turns on [an] . . . examination of the totality of the circumstances confronting law enforcement agents in the particular case." Id. Courts in this Circuit generally analyze six factors from Dorman v. United States, 435 F.2d 385, 391 (D.C. Cir. 1970), to help determine whether exigent circumstances are present:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

See also Harris v. O'Hare, 770 F.3d 224, 234 (2d Cir. 2014).

With respect to the initial search conducted by the ESU, it is undisputed that police responded to a report of a shooting, an undeniably serious offense by an armed perpetrator still at large. Police then learned that the shooter ran into the Premises. These circumstances are sufficient to constitute probable cause to search the Premises. See Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003).

It was also reasonable for defendants to believe that there was an urgent need to search the Premises for the shooter. The police cannot be expected to take the time to obtain a warrant when a suspect in possession of a gun, who has already shot one person, is believed to be in a house. This was an active shooter incident. The need to protect both the public and the police officers who were giving chase constituted exigent circumstances sufficient to support the ESU's

initial sweep of the Premises. See Maryland v. Buie, 494 U.S. 325, 334-36, 110 S. Ct. 1093, 1098-99 (1990) (upholding the propriety of a "protective sweep" to look for "individuals posing a danger to those on the arrest scene").

Nor did the unsubstantiated statement from a bystander dissipate these exigent circumstances. Again, this was an active shooter situation. Even if the witness was telling the truth, which there was no way for the police to know at that moment, there is no evidence that the "somebody" who allegedly jumped the fence was the shooter. See United States v. Oguns, 921 F.2d 442, 446-47 (2d Cir. 1990) (upholding a security sweep of a suspect's apartment incident to his lawful arrest even where police were told that the suspect's brother was not in the apartment because the police "still could have reasonably believed that others were in the apartment"). The police did not have to make that call with the potential of lives at stake.

The closer question is whether the exigent circumstances dissipated after the first unsuccessful sweep. Plaintiffs argue that since the ESU team had not found the shooter, there was no basis for performing a subsequent sweep without a warrant.

I think the undisputed facts compel the opposite conclusion. A shooter was still at large and had been seen going into the Premises. This means that the exigency continued for a reasonable time necessary to obtain assurance that the shooter was not in the Premises. See Bing v. City of Whitehall, 456 F.3d 555, 565 (6th Cir. 2006). The level of assurance required to dissipate the exigent circumstances was high because the police were trying to apprehend a suspect who had just shot someone.

Importantly, the Premises were a three-story building with multiple tenants. This meant there were multiple hiding places, and a risk that the ESU had missed the shooter – a risk with significant safety consequences because Precinct officers were instructed to remain at the

6

Premises and guard it while a warrant was being obtained. Moreover, although the record is not precise as to the timing between the ESU sweep and the Precinct sweep, it is fair to conclude that no more than 30 minutes passed between the completion of the ESU sweep and the Precinct sweep. (The first search began at about 2 p.m. and concluded at 3:30 p.m. It is a bit hazy when the second search began, but the Precinct "secured" the building at 3:55 p.m.) See United States v. Cruz, No. 11 Cr. 377, 2012 WL 1564667, at *2 (N.D. Ga. Apr. 30, 2012) (upholding a second sweep of a house where exigent circumstances existed because a shooting suspect was not found during the initial sweep, and police had reason to believe the suspect was still in the house and was a safety threat). In practical terms, the Precinct sweep was effectively a continuation of the ESU sweep and was conducted to ensure the safety of the officers. Cf. United States v. Sinclair, No. 10 Cr. 6211, 2012 WL 5389729 (W.D.N.Y. Nov. 2, 2012) (finding secondary sweep was essentially a continuation of the initial sweep).

The Precinct's final search was also constitutional because it was conducted pursuant to a valid warrant. During the initial two sweeps, conducted during the exigency, defendants observed contraband, which included marijuana and a firearm, in plain view, as it was found on the first floor and in a basement closet, all locations where the shooter might have been hiding. There is no evidence that these initial searches were anything other than "protective sweeps". Once defendants saw the contraband in commonly accessible locations, they had probable cause to request a search warrant. See United States v. Klump, 536 F.3d 113, 118 (2d Cir. 2008). The evidence seized during this search was pursuant to a valid warrant, and therefore reasonable.

**III**

To state a claim for false arrest/false imprisonment under either New York or federal law, a plaintiff must show "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino, 331 F.3d at 75; see also Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (a § 1983 claim for false arrest premised on the Fourth Amendment is "substantially the same as a claim for false arrest under New York law"). The existence of probable cause is a complete defense to an action for false arrest. See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

Based upon my conclusion that both the ESU sweep and the Precinct sweep were permissible under the exigent circumstances exception, it follows necessarily that plaintiffs' temporary detentions during these sweeps were not unreasonable because they were incident to a lawful search.[1] See Muehler v. Mena, 544 U.S. 93, 98, 125 S. Ct. 1465, 1470 (2005). In fact, plaintiffs do not dispute that their detentions were justified. Instead, they appear to take issue with the fact that they were detained even after the ESU's initial search. However, the exigent circumstances presented here gave defendants the authority to detain plaintiffs for a longer period in order to prevent further violence. Id. at 100, 1471 (ruling that an occupant's detention for two to three hours while a search was in progress was not unreasonable).

Probable cause existed to arrest all occupants inside the Premises, including plaintiffs, because defendants found contraband in plain view during the first and second sweeps and in areas accessible to all occupants. Under the doctrine of constructive possession, probable cause existed to arrest all plaintiffs because each of them had access to the basement closet that housed

---

[1] All plaintiffs bring this claim except Brown and Farrier.

8

the rifle. See United States v. Zaleski, 686 F.3d 90, 93 (2d Cir. 2012). In addition, separate bases for probable cause existed for plaintiffs Lespierre, Arnon, Martins, Adam Howard, and Myles, because contraband was found in their living quarters during the searches.

**IV**

Excessive force claims are governed by an objective "reasonableness inquiry that asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989). Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396, 1872 (internal citations omitted). Because defendants were trying to locate a fleeing shooter in a three-story residential building, the force they applied to plaintiffs in this case was reasonable and *de minimis*.[2] See United States v. Walsh, 194 F.3d 37, 49-50 (2d Cir. 1999) (explaining that *de minimis* use of force will typically not amount to a constitutional violation).

Plaintiffs have offered no evidence of any injuries that they suffered. Plaintiffs Martins and Arnon concede that they suffered no physical injuries, and the injuries alleged in the complaint, Chambers' bruised wrist and Dawkins' cut lip, qualify as *de minimis*. See Lemmo v. McKoy, No. 08 Civ. 4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) ("Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth.") (internal citations omitted). The excessive force claims brought by plaintiffs Chambers, Dawkins, Martins, and

---

[2] Defendants' use of force in knocking plaintiff Arnon's cell phone out of his hand was also reasonable, particularly because he told defendants that he was in possession of a knife.

9

Arnon fail because no reasonable jury could find that the amount of force used was excessive and because any injuries they suffered were *de minimis*.

Some of the plaintiffs raise an additional point concerning their treatment by the police during this detention. Specifically, they claim that they were not allowed to obtain proper clothing during their detention. For example, plaintiff Chambers alleges that he was forced to wait outside without shoes. These claims do not rise to the level of constitutional violations. See, e.g., Dawson v. City of Seattle, 435 F.3d 1054, 1069-70 (9th Cir. 2006) (finding plaintiffs' detentions incident to a lawful search to be constitutionally permissible even where a plaintiff was forced to wait without shoes on a patio containing broken glass).

## V

Qualified immunity "shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations omitted). This standard protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

As suggested above, the only close issue as to the violation of plaintiffs' constitutional rights is whether the completion of the first sweep by the ESU made a second sweep, conducted shortly thereafter, constitutionally impermissible. There is no authority in this Circuit as to when a secondary sweep is permissible. The continuation of exigent circumstances is, by its nature, a judgment call. Here, where the shooter had not been located, the invocation of qualified

immunity is appropriate to avoid second guessing the police officers on the scene who had the responsibility of ensuring that no one else got shot.

## VI

Since there were no unconstitutional actions by the City's employees, plaintiffs' Monell claim must be dismissed. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). For the same reason, plaintiffs' state law claims must be dismissed. See Shapiro v. Kronfeld, No. 00 Civ. 6286, 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004) (holding that there can be "no imposition of vicarious liability in the absence of underlying liability").

## CONCLUSION

Based on the Court's Order of December 31, 2014 and this Memorandum Opinion, the Clerk is directed to enter judgment in favor of defendants, dismissing the complaint.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
February 2, 2015